The decision below is hereby signed.  Dated: July
19, 2006.


_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re ) | |
| ) | |
| MICHAEL A. LESICK, ) | Case No. 03-00038 |
| ) | (Chapter 7) |
| Debtor. ) | |
| _____ ) | |
| ) | |
| REHABILITATED INNER CITY ) | |
| HOUSING, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary Proceeding No. |
| ) | 05-10075 |
| MAYOR AND CITY COUNCIL OF ) | |
| BALTIMORE CITY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

DECISION RE MOTIONS TO DISMISS

On January 9, 2003, Michael Lesick, the debtor in the

bankruptcy case in which this adversary proceeding is being

pursued, filed a petition for relief under chapter 7 of the

Bankruptcy Code ("U.S.C."), at which time his assets, including

his interest in various parcels of real property situated in the

City of Baltimore (the "Properties"), became part of his

bankruptcy estate.  An order discharging the debtor was entered

on April 30, 2003.  Although the April 30, 2003 order was never vacated, a second order discharging the debtor was entered on July 15, 2005.[1]

On July 14, 2004 this court entered the Third Order Amending Trustee's Third Amended Motion to Sell Real Property Subject to Liens and Encumbrances authorizing the trustee to sell the estate's interest in the Properties to Rehabilitated Inner City Housing Enterprise, LLC ("RICH").  Pursuant to that order, on July 26, 2004, the trustee executed nineteen quitclaim deeds, transferring the estate's interest in the Properties to RICH.

According to the amended complaint, when RICH attempted to record its quit claim deeds, it discovered that the Mayor and City Council of Baltimore had conducted tax sales with respect to the Properties during the pendency of the bankruptcy case without seeking relief from the automatic stay, divesting the bankruptcy estate of its interest in the Properties and harming RICH. Specifically, the amended complaint alleges that after the commencement of the debtor's bankruptcy case, the Mayor and City Council of Baltimore, by its Director of Finance, conducted Real Estate Tax Lien Auction Sales in May 2005, and conducted other Tax Lien Sales while the bankruptcy case was still pending and without seeking relief from the automatic stay.  The various

---

[1]  On July 17, 2006, the clerk's office made a corrective entry on the docket to reflect that the July 17, 2005 discharge order was entered in error and should be disregarded.

2

transactions alleged to have occurred with respect to the

Properties are as follows:

1.  **207 S. Monroe Street**: On May 14, 2001, Certificate of
    Tax Sale number 139619 was purchased and then assigned
    to Michael Shea on March 6, 2002.  On May 10, 2004,
    Certificate of Tax Sale number 178083 was purchased and
    then assigned to Charles Ferguson on July 7, 2005.

2.  **1503 N. Collington Avenue**: On May 14, 2001, Certificate
    of Tax Sale number 132091 was purchased and then
    assigned to Friedman Properties on February 27, 2002.
    On October 12, 2005, Certificate of Tax Sale number
    194233 was purchased and marked not to be assigned.

3.  **2538 W. Baltimore Street**: On May 14, 2001, Certificate
    of Tax Sale 128918 was purchased.  On December 7, 2001,
    the Certificate of Tax Sale was assigned to Broadway
    2001, LLC.  On May 21, 2003, Broadway 2001 LLC
    commenced an action to foreclose the Right of
    Redemption.  On May 9, 2005, Urbana Development, LLC
    purchased Certificate of Tax Sale number 185182.

4.  **2553 W. Fairmount Avenue**: On May 10, 2005, Certificate
    of Tax Sale number 174808 was purchased.  On October 5,
    2005, the Certificate of Tax Sale was assigned to
    LANPA, LLC.[2]

5.  **2105 Clifton Avenue**: On May 15, 2000, the Mayor and
    City Council of Baltimore purchased Certificate of Tax
    Sale number 116250.  On October 11, 2000, the
    Certificate of Tax Sale was assigned to MKR
    Certificates.  On May 9, 2005, Fidelity Tax, LLC
    purchased Certificate of Tax Sale 186589.

6.  **1046 N. Milton Avenue**: On May 14, 2001, the Mayor and
    City Council of Baltimore purchased Certificate of Tax
    Sale number 1397427.  On April 2, 2002, the Certificate
    of Tax Sale was assigned to Y R 1, LLC.  On April 24,
    2003 or sooner, Y R 1, LLC instituted an action to
    foreclose the Right of Redemption.  On May 9, 2005,
    Compound Yield Play LLC purchased Certificate of Tax

---

[2]  RICH filed a notice of voluntary dismissal with prejudice
of any all claims against LANPA, LLC (DE No. 33, filed May 3,
2006).

Sale number 190201.

7.  **104 N. Ellwood Avenue**: On May 9, 2005, Certificate of Tax Sale number 187472 was purchased by First Choice Investments.  The Certificate of Tax Sale was then assigned to Tango Properties, LLC.  On August 3, 2005, Tango Properties instituted an action to foreclose the Right of Redemption.

8.  **36 N. Abington Avenue**: At a May 14, 2001 tax lien sale, Carolyn Parker purchased Certificate of Tax Sale 127925.  On May 9, 2005, Mid Atlantic Tax Sale LLC purchased Certificate of Tax Sale number 184858.

9.  **44 N. Abington Avenue:** On May 9, 2005, Mid Atlantic Tax Sale LLC purchased Certificate of Tax Sale number 184859.

10.  **619 Denison Street**:  On May 9, 2005, Samuel Lamoy purchased Certificate of Tax Sale number 186946.

11.  **1314 Druid Hill Avenue**: On May 9, 2005, Rhonda Mitchell purchased Certificate of Tax Sale number 187039.

12.  **2512 Barclay Street**: On May 14, 2001, U.S. Liens, LLC[3] purchased Certificate of Tax Sale number 128992.

13.  **3711 Beehler Avenue**: On May 9, 2005, Baltimore Return Funds, LLC purchased Certificate of Tax Sale number 185298.

14.  **348 W. 27th Street**:  At a date uncertain, one of the following is alleged to have redeemed the property from a tax sale: Dear Management and Construction Company; N.B.S., Inc.; Uptown Realty Co. Limited Partnership.

15.  **317 Illchester Avenue**: At a date uncertain, one of the following is alleged to have redeemed the property from a tax sale: Dear Management and Construction Company; N.B.S., Inc.; Uptown Realty Co. Limited Partnership.

16.  **1815 W. North Avenue**: On May 9, 2005, Fidelity Tax LLC purchased Certificate of Tax Sale number 190857.

---

[3]  Also referred to in the complaint as U.S. Tax Liens, LLC.

4

17. **2315 McCulloch Street**: On September 18, 2002, the Mayor
and City Council of Baltimore purchased Certificate of
Tax Sale 162232.  On October 20, 2005, Project 5000
filed an action to foreclose the Right of Redemption.

RICH contends that the auction sales and any resulting

issuance of certificates of tax sale, and/or assignments to third

parties, as well as any resulting actions to foreclose the Right

of Redemption, were acts against the debtor and the bankruptcy

estate in violation of the automatic stay.  By its amended

complaint, RICH seeks a declaratory judgment that this

constituted a willful violation of the automatic stay and that

such actions, as well as any circuit court actions involving the

foreclosure of the Right of Redemption and any redemptions made

by third parties, are void and without force and effect.  RICH

likewise seeks damages for harm it suffered as a result of the

defendants' violation of the automatic stay.

The Mayor and City Council of Baltimore have filed a motion

to dismiss.  In its motion, the Mayor and City Council of

Baltimore contend that by May 2005, the Property was fully

administered and was therefore no longer subject to the automatic

stay.[4]  RICH filed a response (DE No. 61, filed June 12, 2006),

---

[4]  The motion to dismiss does not address any actions taken
by the Mayor and City Council of Baltimore post-petition other
than the May 2005 tax sales.  The allegations of the amended
complaint, however, are not limited to the May 2005 tax sales.
For example, RICH alleges that Certificate of Tax Sale number
178083 relating to 207 S. Monroe Street was purchased on May 10,
2004, and an exhibit attached to the amended complaint in support

urging that the motion be denied because (1) a case is not "fully administered" until the chapter 7 trustee files his final report and account and the court closes the case; (2) there remain several factual issues surrounding the City of Baltimore's pre- and post-petition actions that are not appropriately disposed of on motion to dismiss; and (3) the motion to dismiss is not the appropriate vehicle for disposing of the constitutional issues surrounding the adequacy of notice given by the City in connection with the Properties.  Defendants Rhonda Mitchell (DE No. 85, filed June 28, 2005), Urbana Development, LLC (DE No. 83, filed June 28, 2006), Fidelity Tax, LLC (DE No. 30, filed April 11, 2006), U.S. Liens, LLC (DE No. 53, filed May 31, 2006), Baltimore Return Funds (DE No. 43, filed May 22, 2006), Mid Atlantic Tax Sale, LLC (DE No. 19, filed March 27, 2006), and Compound Yield Play, LLC (DE No. 42, filed May 22, 2006) have all filed motions to dismiss.  The court has granted the motion of Fidelity Tax, LLC as unopposed, and with the exception of the Mayor and City Council of Baltimore's motion, all of the other defendants' motions to dismiss remain unopposed and could be dismissed on that basis alone.  If the amended complaint survives

---

of that allegation reflects that the Certificate was sold to the Mayor and City Council of Baltimore (Exh. 4B).  As explained in greater detail below, the Properties were still estate property as of May 10, 2004, and actions taken with respect to the Properties prior to the chapter 7 trustee's execution of the quit claim deeds implicate the automatic stay in ways that actions taken after the execution of the quit claim deeds do not.

the Mayor and City Council of Baltimore's motion to dismiss, and
the court ultimately finds that the Mayor and City Council of
Baltimore's tax sales violated the automatic stay thereby
rendering certain tax sales and the issuance of related tax
certificates void, however, this could impact the rights of the
defendants who have moved for dismissal and whose motions have
gone unopposed.  Accordingly, the court will address the
sufficiency of the claims against each of the defendants in order
to clarify what, if any, impact any of the alleged stay
violations stand to have on the defendants' respective rights in
the Properties.

The remaining defendants, other than LANPA, LLC who was
voluntarily dismissed from these proceedings, have not responded
to the amended complaint.[5]

I

DISMISSAL OF CLAIM FOR DAMAGES UNDER 11 U.S.C. § 362(h) FOR LACK
OF STANDING

RICH seeks a declaratory judgment that the defendants'
actions violated the automatic stay and are consequently void.
RICH also seeks to recover damages for injuries it allegedly
sustained as a result of those stay violations.  As a threshold

---

[5]  Those defendants include: First Choice Investors, LLC,
Tango Properties, LLC, Charles Ferguson, Michael Shea, Friedman
Properties, Samuel Lamoy, Y R 1 LLC, Carolyn Parker, MKR
Certificates, LLC, Suit Yourself, LLC, Broadway 2001, LLC, Dear
Management & Construction Co., N.B.S., Inc., and Uptown Realty
Co., LP.

matter, the court must determine whether RICH, a limited

liability company that is not the debtor, the trustee, or a pre-

petition creditor, has standing to pursue this adversary

proceeding.  To seek relief in federal court, litigants must

satisfy the test for both Article III and prudential standing.

Elk Grove Unified School District v. Newdow, 542 U.S. 1, 11

(2004)(the Supreme Court's "standing jurisprudence contains two

strands: Article III standing, which enforces the Constitution's

case or controversy requirement, and prudential standing, which

embodies judicially self-imposed limits on the exercise of

federal jurisdiction.") (internal quotations and citations

omitted).  In order to satisfy the standing requirements of

Article III, "[t]he plaintiff must show that the conduct of which

he complains has caused him to suffer an 'injury in fact' that a

favorable judgment will redress."  Id. at 12 (citing Lujan v.

Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).  The alleged

injury "must be . . . distinct and palpable, . . . and not

abstract or conjectural or hypothetical."  United Tranportation

Union v. Interstate Commerce Commission, 891 F.2d 908, 911 (D.C.

Cir. 1989).  Prudential standing, on the other hand, refers to

"the general prohibition on a litigant's raising another person's

legal rights, the rule barring adjudication of generalized

grievances more appropriately addressed in the representative

branches, and the requirement that a plaintiff's complaint fall

8

within the zone of interest protected by the law invoked." Elk
Grove Unified School District v. Newdow, 542 U.S. at 12 (quoting
Allen v. Wright, 468 U.S. 737, 751 (1984)).

In the instant case, RICH alleges that the defendants'
violation of the automatic stay divested or otherwise directly
impaired RICH's legal rights with respect to the Properties.  As
such, RICH's amended complaint adequately asserts that RICH
suffered a "distinct and palpable" injury resulting from the
alleged violation.  A declaration that the actions were taken in
violation of the stay and are void would restore RICH's rights in
the Properties thereby redressing the alleged injury.
Accordingly, the court finds that RICH has satisfied the standing
requirements of Article III to seek relief against the defendants
for their alleged violation of the automatic stay.

Having satisfied the standing requirements of Article III,
the more difficult question remains of whether RICH has
prudential standing under the Bankruptcy Code to seek both
declaratory and monetary relief for alleged violations of the
automatic stay.  Because the statutory basis allowing RICH to
obtain a declaratory judgment is distinct from that which may
permit RICH to pursue damages, the court will consider each of
these requests separately.

The court holds that RICH does not have prudential standing
to seek monetary damages for violations of the automatic stay

9

under 11 U.S.C. § 362(h).  Section 362(h) provides that "an
individual injured by any willful violation of a stay provided by
this section shall recover actual damages, including costs and
attorneys' fees, and, in appropriate circumstances, may recover
punitive damages."[6]  This is the only code provision that
provides an express private right of action to seek damages for
alleged violations of the automatic stay.  See Barnett Bank of
Southeast Ga., N.A. v. Trust Co. Bank of Southeast Ga., N.A. (In
re Ring), 178 B.R. 570, 575 (S.D. Ga. 1995).

There is a split in authority over whether business entities
such as corporations, partnerships, and LLCs, may pursue damages
under § 362(h).  The Third and Fourth Circuits have held that §
362(h) is applicable to business entities as well as natural
persons, notwithstanding the statute's use of the word
"individual."  Cuffee v. Atlantic Business and Community Dev.
Copr. (In re Atl. Bus. and Community Corp.), 901 F.2d 325, 329
(3d Cir. 1990); Budget Serv. Co. V. Better Homes of Va., 804 F.2d
289, 292 (4th Cir. 1986); see also Pardo v. Pacificare of Tex.,
Inc. (In re APF Co.), 264 B.R. 344 (Bankr. D. Del. 2001).  By
contrast, the Eighth, Ninth and Eleventh Circuits hold that under
well-established principles of statutory construction, the court
is required to adhere to the plain meaning of § 362(h) and, given

--------

[6]  Under BAPCPA, this provision is now found at 11 U.S.C. §
362(k)(1).

10

the statute's use of the word "individual," the application of §
362(h) must be limited to natural persons.  See Maritime
Asbestosis Legal Clinic v. LTV Steel Co. (In re Chateaugay
Corp.), 920 F.2d 183 (2d Cir. 1990); Sosne v. Reinert & Duree,
P.C. (In re Just Brakes Corp. Sys.), 108 F.3d 881, 884 (8th Cir.
1997), cert denied 522 U.S. 947 (1997); Johnston Envtl. Corp. V.
Knight (In re Goodman), 991 F.2d 613, 619 (9th Cir. 1993); Jove
Eng'g, Inc. v. IRS, 92 F.3d 1539 (11th Cir. 1996).  In the past,
this court has expressed its agreement with those courts holding
that § 362(h) can only be invoked by natural persons, not by
corporations or other business entities.  In re Franklin Mortgage
& Investment Co. , 143 B.R. 295 (Bankr. D.D.C. 1992).  Even if
RICH were not precluded from invoking § 362(h) based merely upon
its status as a limited liability company, however, RICH would
still lack prudential standing to seek damages under § 362(h)
because, as explained in more detail below, it is not a pre-
petition creditor.

Although some courts have held that § 362(h) provides a
private right of action only to the debtor and the trustee,
Tilley, B & C Equities v. Vucurevich (In re Pecan Groves of
Arizona), 951 F.2d 242 (9th Cir. 1991), because one of the
purposes of the stay is to protect the rights of creditors to
share equally in estate assets, the prevailing view is that §
362(h) also provides a private right of action to pre-petition

11

creditors.  Metropolitan Life Insurance Co. v. Alside Supply

Center of Knoxville (In re Clemmer) 178 B.R. 160, 167 (Bankr.

E.D. Tenn. 1995).  There is, however, no equivalent reasoning to

justify an extension of § 362(h)'s private right of action to

third-party purchasers of estate assets, and courts have

repeatedly declined to extend the applicability of § 362(h) to

parties other than the debtor, the trustee, or pre-petition

creditors.  See In re Prairie Trunk Railway, 112 B.R. 924 (N.D.

Ill. 1990) (finding a violation of the automatic stay but

declining to extend the private cause of action for damages

arising from a stay violation under § 362(h) to a purchaser of

estate property); In re Clemmer, 178 B.R. at 167 (declining to

extend § 362(h)'s definition of "individual" to nondebtor

noncreditor third parties); see also Lynch v. Johns-Manville

Sales Corp., 710 F.2d 1194, 1197 (6th Cir. 1983)("Nothing in the

legislative history counsels that the automatic stay should be

invoked in a manner which would advance the interests of some

third party, such as the debtor's co-defendants, rather than the

debtor or its creditors.").  This court holds that as a non-

creditor third party, RICH does not come within the zone of

interests intended to be protected by § 362(h) and RICH therefore

lacks prudential standing to seek monetary damages from the

defendants under 11 U.S.C. § 362(h).[7]  Accordingly, the court

will dismiss the amended complaint to the extent it seeks

monetary damages arising from the alleged violations of the

automatic stay under § 362(h).

By contrast, the court finds that RICH does have prudential

standing to seek to obtain a declaratory judgment that the

defendants' actions violated the automatic stay and are void.

Importantly, this court adheres to the majority view that actions

taken in violation of the automatic stay are void and not merely

voidable.  see Rothenberg v. Ralph D. Kaiser Co. (In re

Rothenberg), 173 B.R. 4 (Bankr. D.D.C. 1994) (adopting majority

view that actions taken in violation of stay are void).  As such,

it is unnecessary for RICH to demonstrate that it is vested with

an affirmative power to avoid the actions that are alleged to

---

[7]     RICH may still have standing to pursue contempt
sanctions under 11 U.S.C. § 105.  See In re Goodman, 991 F.2d at
620.  In In re Franklin Mortgage & Investment Co., 143 B.R. 295
(Bankr. D.D.C. 1992), for example, this court permitted a
corporate debtor to pursue contempt sanctions when it was unable
to pursue damages under § 362(h) due to its corporate status.
That case is distinguishable from the instant case, however,
because RICH, unlike the corporate debtor in In re Franklin
Mortgage & Investment Co., would not be eligible to seek relief
under § 362(h) even if it qualified as an "individual" for
purposes of the statute.  The court finds it doubtful that RICH
is entitled to resort to the court's § 105 powers to address a
stay violation when doing so would not merely circumvent a
technical limitation of § 362(h), but would also purport to
expand the list of parties entitled to invoke the protection of
the automatic stay.  See Metropolitan Life Insurance Co. v.
Alside Supply Center of Knoxville (In re Clemmer), 178 B.R. 160,
168 (Bankr. E.D. Tenn. 1995).

have been taken in violation of the automatic stay. <u>In re Ring</u>,
178 B.R. 570, 579 (Bankr. S.D. Ga. 1995).  Rather, to establish
that it has standing to seek to obtain a declaratory judgment as
to the validity of actions taken in alleged violation of the
automatic stay, it is enough for RICH to establish that it is in
the "zone of interest" of § 362 by demonstrating that it has "a
cognizable interest in the subject property" and that it is a
party "whose interests have been harmed" by the actions taken in
alleged violation of the stay. <u>Id.</u>  As the purchaser of the
estate's interest in the Properties whose rights depend upon the
validity of the defendants' actions, RICH has a cognizable legal
interest in a determination of the validity of those actions.  By
alleging that the defendants' actions directly impaired RICH's
legal entitlement to the Properties, RICH alleges the type of
harm necessary to support prudential standing.  Because RICH has
satisfied the requirements of both Article III and prudential
standing, the court finds that RICH has standing to seek to
obtain a declaratory judgment that the defendants' actions taken
in alleged violation of the automatic stay are void.

## II

### DISMISSAL OF CLAIMS ARISING FROM PREPETITION ACTS AND FROM ACTS OCCURRING AFTER JULY 26, 2004

RICH's amended complaint is based on the automatic stay of
11 U.S.C. § 362(a) which arose from the debtor's commencement of
the bankruptcy case in which this adversary proceeding is being

14

pursued.  Specifically, the plaintiff contends that the
defendants violated § 362(a) by reason of postpetition tax sales
of the Properties, transfers of Certificates of Tax Sale relating
to the Properties, and actions taken to foreclose the Right of
Redemption with respect to those Certificates of Tax Sale.[8]  RICH
does not dispute that the trustee executed the quit claim deeds
on July 26, 2004, prior to several of the actions taken with
respect to the Properties which are alleged to have violated the
automatic stay.  The Properties ceased to be estate property upon
the trustee's execution of the quit claim deeds, and the actions
taken by the defendants after the trustee's July 26, 2004
execution of the quit claim deeds did not violate the automatic
stay barring acts against estate property.

If the trustee had executed the quit claim deeds before the
debtor received a discharge, however, this adversary proceeding
would raise the interesting question of whether the automatic
stay applies to enforcement of a lien on property that is not
property of the estate if the in rem debt that the lien secures
is one for which the debtor was also liable in personam.  In
other words, if the discharge order had not been entered and the
stay barring acts to collect claims against the debtor still
applied, RICH might have argued that, notwithstanding that the

---

[8]  It goes without saying that conduct alleged to have
occurred pre-petition cannot serve as the basis for a finding
that the defendants violated the automatic stay.

Properties were no longer property of the estate after July 26,
2004, the in rem actions taken against the Properties constituted
acts to collect claims against the debtor under § 362(a)(1)
because enforcement of the in rem claims against the Properties
worked to reduce the debtor's personal liability on the same
debts.[9]  It is unnecessary for the court to resolve this
question, however, because the discharge order in this case was
entered on April 30, 2004.[10]  Thus, by the time the trustee sold

---

[9]  The courts are divided on whether such acts trigger the
protections of § 362(a)(1)'s stay against acts to recover a claim
against the debtor.  At least one court has held that enforcement
of a lien against non-estate property formerly belonging to the
debtor is a strictly in rem proceeding that may or may not result
in a subsequent enforcement action to collect a deficiency from
the debtor.  See Everchanged, Inc. v. First Nationwide Mortgage
Corp. (In re Everchanged, Inc.), 230 B.R. 891, 894-95 (Bankr.
S.D. Ga. 1999).  By contrast, the Second Circuit held that a
third-party action to recover fraudulently transferred property
that formerly belonged to the debtor but that is not currently
estate property, may properly be regarded as undertaken 'to
recover a claim against the debtor' and subject to the automatic
stay pursuant to § 362(a)(1).  FDIC v. Hirsch (In re Colonial
Realty Co.), 980 F.2d 125, 132 (2nd Cir. 1992).  Had no discharge
order been entered in this case, RICH could have made a credible
argument that, pursuant to the reasoning of Colonial Realty, the
tax sales constituted an "action . . . to recover a claim against
the debtor" within the meaning of § 362(a)(1).  Id.  This
argument, however, is unavailable to RICH in light of the
discharge order entered prior to the execution of the quit claim
deeds.

[10]  The court observes that even if the debtor had not
received a discharge, and even if many of the actions of the
Mayor and City Council of Baltimore and the other defendants
should consequently be deemed void as having been taken in
violation of the automatic stay against acts to recover a claim
against the debtor under § 362(a)(1), see In re Rothenberg, 173
B.R. 4 (Bankr. D.D.C. 1994), this court has always recognized
that annulment of the stay is appropriate if the purposes of the

16

the Properties to RICH, the stay barring acts to collect claims against the debtor was no longer in effect. Accordingly, any actions taken by the defendants after the trustee executed the quit claim deeds did not implicate the automatic stay.

As to most of the defendants, RICH's amended complaint alleges only that they were involved in transactions related to the Properties either pre-petition or after the execution of the quit claim deeds. Accordingly, and as explained in more detail above, none of the actions taken by those defendants violated the automatic stay in this bankruptcy case. Thus, as to defendants Michael Shea, Friedman Properties, Urbana Development, LLC, MKR Certificates, LLC, Compound Yield Play, LLC, First Choice Investments, Carolyn Parker, Mid Atlantic Tax Sale, LLC, Samuel Lamoy, U.S. Liens, LLC, Rhonda Mitchell, Baltimore Return Funds, LLC, and Tango Properties, the amended complaint fails to state a

---

automatic stay could not be served by having the automatic stay be in effect. The purposes of enforcing the automatic stay "are to protect the debtor's assets, provide temporary relief from creditors, and further the equity of distribution among the creditors by forestalling a race to the courthouse." Reliant Energy Servs., Inc. V. Enron Canada Corp., 349 F.3d 816, 825 (5th Cir. 2003) (quoting GATX Aircraft Corp. V. M/V Courtney Leigh, 768 F.2d 711, 716 (5th Cir. 1985). As of May 2005, when many of the acts alleged to have violated the automatic stay occurred, the trustee had fully administered the estate. Accordingly, even if the order discharging the debtor had not yet been entered at the time the May 2005 tax sales occurred, and even if the court found that the tax sales violated the stay against acts to recover a claim against the debtor under § 362(a)(1), the court would likely find sufficient grounds for annulment of the automatic stay as to those transactions.

claim upon which relief may be granted and the amended complaint
will be dismissed as to them accordingly.

Likewise, the amended complaint fails to indicate when
during the pendency of the bankruptcy case Dear Management and
Construction Company, N.B.S., Inc., or Uptown Realty Co. Limited
Partnership is alleged to have redeemed the 348 W. 27th Street
and 317 Illchester Avenue properties from tax sales.  Because the
amended complaint fails to allege that the properties were
redeemed from tax sales prior to July 26, 2004, the amended
complaint fails to state a claim upon which relief may be granted
as to those defendants and the claims against them will be
dimissed.

Finally, as to Suit Yourself, LLC, the amended complaint
must be dismissed because it fails to allege any conduct on the
part of this defendant.

III

CLAIMS NOT DISMISSED

RICH alleges that the Mayor and City Council of Baltimore
purchased Certificate of Tax Sale number 178083 relating to 207
S. Monroe Street on May 10, 2004, prior to the trustee's sale of
the Properties and without seeking relief from the automatic
stay.  Because 207 S. Monroe Street was estate property on May
10, 2004, RICH's amended complaint states a claim that the Mayor
and City of Baltimore's action was taken in violation of the

18

automatic stay barring acts taken against estate property.
Accordingly, the court will deny the Mayor and City Council of
Baltimore's motion to dismiss on this limited basis.

If the court ultimately determines that the May 10, 2004
purchase of Certificate of Tax Sale by the Mayor and City Council
of Baltimore violated the automatic stay, the court may declare
such action void, which could likewise render void the assignment
of the Certificate of Tax Sale to Charles Ferguson on July 7,
2005.  Accordingly, and on this limited basis, the court will not
dismiss the action as to Charles Ferguson.

The amended complaint alleges that Certificate of Tax Sale
number 1397427 relating to 1046 N Milton Avenue was assigned to Y
R 1, LLC on April 2, 2002, and that on April 24, 2003 or sooner,
and without seeking relief from the automatic stay, Y R 1 LLC
instituted an action to foreclose the Right of Redemption.  The
N. Milton Avenue property was estate property on April 24, 2003,
and RICH's allegation that Y R 1, LLC filed an action to
foreclose the Right of Redemption as to that property is
sufficient to state a claim for violation of the automatic stay.
For this reason, the court will not dismiss the amended complaint
as to Y R 1, LLC.

Finally, the amended complaint alleges that Broadway 2001,
LLC commenced an action on May 21, 2003 to foreclose the Right of
Redemption as to a certificate of tax sale it purchased

19

prepetition.  The amended complaint adequately states a claim

that the foreclosure action was void under the automatic stay.


## IV

### THE COURT IS NOT REQUIRED TO ADDRESS THE CONSTITUTIONAL ADEQUACY OF NOTICE OF TAX SALES TO DISPOSE OF THIS ADVERSARY PROCEEDING

In its response to the Mayor and City Council of Baltimore's

motion to dismiss, RICH asserts that factual issues remain

regarding the adequacy of notice of auction and the sale

certificates issued by the City as well as the propriety of

notice given, if any, by the certificate holders in their suits

to foreclose on those certificates.  RICH likewise states that

these issues implicate the 14th Amendment to the United States

Constitution and are not appropriately raised on motion to

dismiss.  Although it is within this court's jurisdiction to

determine whether a sale of property formerly belonging to the

debtor and to the estate violated the automatic stay, it is not

within the court's jurisdiction to determine whether the City of

Baltimore properly noticed the tax sales, a matter not arising

under tile 11, or arising in or related to this bankruptcy case.

28 U.S.C. § 1334.  Although RICH may be entitled to some form of

relief if the City of Baltimore failed to give adequate notice of

the tax sales, such action must be pursued in a court of

competent jurisdiction.

## VI

For the foregoing reasons, an order follows dismissing the amended complaint in large part as recited above.

[Signed and dated above.]


Copies to:

All counsel of record.